Jared D. MEYER, Appellant-Respondent,

v.

Orlyn LOCKARD, Jr., M.D., et al., Respondents-Appellants.

Nos. WD 61412, WD 61464.

Missouri Court of Appeals, Western District.

Oct. 28, 2003.

Joseph A. Morrey, St. Joseph, MO, Edward D. Robertson, Jr., Mary Winter, and Anthony L. DeWitt, Jefferson City, MO, for Appellant-Respondent.

Thomas W. Wagstaff and Jonathan P. Kieffer, Kansas City, MO, for Respondents-Appellants.

Before ULRICH, P.J., and HOWARD and NEWTON, JJ.

VICTOR C. HOWARD, Judge.

Dr. Orlyn Lockard, Jr., ("Lockard") appeals from a jury verdict rendered in the Circuit Court of Buchanan County, the Honorable Weldon C. Judah presiding, in favor of Jared E. Meyer ("Meyer") on a medical negligence claim. Meyer cross-appeals from a post-verdict order made by the trial court on its own motion for a new trial on damages. Lockard concedes, and we agree, that the trial court had no jurisdiction to order a new trial on damages on its own motion. Given our decision on Lockard's appeal, however, Meyer's cross-appeal is moot. Lockard raises five points on appeal. In his first point, he argues the trial court erred in overruling his motions for a directed verdict and judgment notwithstanding the verdict because Meyer failed to make a submissible case of medical negligence. As we have determined this point is dispositive and requires reversal, we need not address Lockard's remaining points on appeal. We find Meyer did not introduce sufficient evidence to support the submission of each of his allegations of medical negligence. The trial court, therefore, erred in giving the disjunctive verdict directing instruction. The judgment is reversed, and the case is remanded for a new trial.

## Background

In the fall of 1993, at the age of nineteen, Meyer became seriously ill with Inflammatory Bowel Disease ("IBD"). Meyer had the classic symptoms of abdominal pain and diarrhea. IBD is characterized by varying degrees of inflammation in the digestive tract and is universally described as various subcategories of disease falling along a spectrum. At one end of the spectrum is Ulcerative Colitis; at the other end is Crohn's Disease. These two forms of IBD have certain distinctions, but they share many similarities, which can make an exact diagnosis challenging, especially at the outset. Many IBD patients must be followed and observed for an extended period of time before the exact disease entity "declares itself" as either Crohn's Disease or Ulcerative Colitis.

Ulcerative Colitis is characterized by more generalized and superficial inflammation limited to the colon. In contrast, Crohn's Disease can occur anywhere within the digestive tract, from the mouth to the anus. Someone suffering from Crohn's Disease will have deeper inflammation that can actually penetrate through the intestinal wall. Both forms of IBD often are treated with anti-inflammatory medications, such as corticosteroids. Prednisone, a corticosteroid commonly prescribed to treat IBD, has serious, and at times debilitating, side effects. Ulcerative Colitis can be surgically cured by the removal of the entire colon. Crohn's disease has no known cure. Surgery to remove the most diseased portions of the digestive tract to potentially provide some remission of symptoms is an option if a Crohn's patient cannot control his disease with medication.

Lockard began treating Meyer in late 1993. Lockard is a gastroenterologist who has practiced in St. Joseph, Missouri, since 1979. He is board certified in internal medicine and gastroenterology. In December of 1993, Meyer was hospitalized at Heartland Hospital in St. Joseph for symptoms associated with IBD, and Lockard was asked to consult on the case. Lockard diagnosed Meyer as suffering from Crohn's Disease. He concluded that Meyer's physical symptoms, the appearance of

the disease when examined endoscopically, and the progression of the disease were more indicative of Crohn's Disease than Ulcerative Colitis.

Lockard treated Meyer for a period of four years. Early in Meyer's treatment, Lockard prescribed Prednisone to help control inflammation. Meyer's condition improved for a time. In the fall of 1994, the disease worsened. Lockard reevaluated Meyer by means of several scope procedures. Meyer was admitted to Heartland Hospital in December 1994. During this hospitalization, Lockard and Meyer discussed what alternatives existed to control his disease, and Lockard had a surgeon consult.

As a result of these evaluations, Meyer decided to undergo surgery to remove the most diseased portions of his colon, while leaving as much healthy tissue as possible, in an attempt to lessen his symptoms. Following the subtotal colectomy in January of 1995, Meyer's health generally improved, aside from occasional flare-ups of his disease. When symptoms did flare, Lockard prescribed medication to control them. Although Lockard made continuous attempts from the beginning to taper Meyer's medications, so he could eventually stop taking them, in Lockard's opinion, Meyer's refractory disease did not permit a complete cessation of Prednisone.

In late 1996, Meyer began to experience discomfort in his hips allegedly caused by his continued use of Prednisone to control symptoms.[1] Lockard referred Meyer to Dr. Bruce Smith ("Smith"), an orthopedic surgeon, for evaluation. Meyer and Smith discussed various options, including surgery. Ultimately, Meyer decided he did not need further treatment for his hips. The last time Meyer saw Smith he report-ed he had no symptoms and no problems with his hips. Smith instructed Meyer to return for a check-up in six months. Because his problems had improved significantly, however, Meyer never returned to Smith for further orthopedic care.

Meyer began experiencing increasingly severe flare-ups of his disease in the fall of 1997. In November of 1997, Meyer visited Dr. Mark Allen ("Allen") for a second opinion about his disease and treatment. Allen is a gastroenterologist who practices at St. Luke's Hospital in Kansas City, Missouri. Meyer brought with him only the operative note and pathology report from the January 1995 subtotal colectomy surgery. Based on that information, Allen initially found it was unclear whether Meyer had Crohn's Disease or Ulcerative Colitis, although the pathology report caused him to lean toward a diagnosis of Ulcerative Colitis.

To aid him in a definitive diagnosis, Allen scheduled Meyer for a flexible sigmoidoscopy to study the diseased tissue. Allen had Dr. Jetmoore, a colo-rectal surgeon, perform this procedure with him in order to have an additional opinion concerning the nature of the disease and to determine if certain types of surgery, such as a procedure called a j-pouch, were advisable. Both doctors concluded Meyer had Crohn's Disease because the appearance of his disease endoscopically was classic for Crohn's. Dr. Jetmoore did not want to perform a j-pouch surgery. Generally, that procedure is contraindicated in Crohn's patients because of the risk of serious post-operative complications.

Subsequently, Meyer returned to see Lockard, and they had a lengthy discus-

---

1.  Prednisone reduces blood flow to bones and joints, causing avascular necrosis. Avascular necrosis can cause bone fractures.

sion about available alternatives. They discussed the possibility of surgery to remove the remainder of Meyer's colon and rectum, which would leave him with an ostomy bag. Lockard encouraged Meyer to seek another opinion. Meyer agreed, and Lockard referred him to the University of Kansas Medical center where Dr. Richard McCallum ("McCallum") saw him in January of 1998.

McCallum told Meyer that his condition was more characteristic of Ulcerative Colitis than of Crohn's Disease. McCallum informed Meyer his last remaining option was a j-pouch surgery. Meyer decided to proceed with the surgery, which was performed in March of 1998. He had to wear a temporary ostomy bag for eight months after the surgery. Unfortunately, he developed several post-operative complications. He had a serious infection that necessitated the implantation of a surgical drain and vacuum pump in his body to suction out infectious material and waste. Meyer also had to undergo multiple surgeries to address post-operative problems. The ostomy bag that was removed after eight months had to be replaced and remained, except for intermittent breaks, for a period of eighteen months. Ultimately, Meyer's previous problems with vomiting and abdominal cramping subsided. He no longer has to take Prednisone. McCallum, his treating physician, has proclaimed him cured of Ulcerative Colitis.

On October 6, 1999, Meyer filed suit against Lockard and his professional corporation, St. Joseph Gastroenterology, Inc., alleging medical negligence. The case was tried to a jury beginning on December 3, 2001. At trial, McCallum testified that after the pathology reports came back from the subtotal colectomy in 1995, Lockard had enough information to determine Meyer did not have Crohn's Disease. McCallum further testified that

Lockard did not exercise such care as a reasonable, prudent, and careful health-care provider would have under the same or similar circumstances when he failed to correctly diagnose Meyer's condition as Ulcerative Colitis, not Crohn's Disease, after the surgery in 1995. When asked if the failure to correctly diagnose Meyer in January of 1995 exhibited negligence, McCallum responded, "Following the surgery when [Meyer] had inflammation I think [Lockard] could have taken different steps." McCallum followed this comment by saying Lockard's failure to correctly diagnose Meyer based on the results of the surgery in January of 1995 contributed to damage to Meyer.

At the close of Meyer's case, Lockard made both written and oral motions for a directed verdict because Meyer's expert medical testimony, which came exclusively from McCallum, failed to establish that Lockard was negligent in his treatment of Meyer or that any alleged negligence directly caused damage to Meyer. Lockard challenged the sufficiency of Meyer's evidence concerning liability, causation, and damages. The trial court overruled these motions. At the close of all the evidence, Lockard again made both written and oral motions for directed verdict essentially on the same grounds. The court again overruled the motions.

The case was submitted to the jury following closing arguments on December 7, 2001. The jury returned a verdict in favor of Meyer. On January 15, 2002, the court entered a judgment on the jury's verdict in favor of Meyer, and on January 17, 2002, a corrected judgment was entered. On February 13, 2002, Lockard timely filed a consolidated post-trial motion seeking judgment notwithstanding the verdict, a new trial, or remittitur, as alternative forms of relief. The court entered an Order denying the motion in its entirety on May 10,

2002. Then, the court, on its own motion, ordered a new trial as to all issues of damages. Lockard appeals from the judgment entered on the jury's verdict and from the trial court's Order of May 10, 2002.

## Argument

■ We have analyzed all of Lockard's points on appeal and have determined that his first point will be dispositive. In his first point, Lockard alleges the trial court erred in overruling his motions for a directed verdict and judgment notwithstanding the verdict because Meyer failed to make a submissible case of medical negligence. In determining whether Meyer made a submissible case against Lockard, we view the evidence in the light most favorable to Meyer, giving him the benefit of all favorable evidence and reasonable inferences drawn therefrom, and disregard all contrary evidence. *Sheffler v. Arana*, 950 S.W.2d 259, 267 (Mo.App. W.D.1997). A case will not be taken from the jury unless there is no room for reasonable minds to differ. *Coon v. Dryden*, 46 S.W.3d 81, 89 (Mo.App. W.D.2001). We will reverse the jury's verdict for insufficient evidence only if there is a complete absence of probative fact to support the jury's conclusion. *Id.*

■ In order to make a submissible case in a medical malpractice action, a plaintiff must establish, "(1) an act or omission of defendant failed to meet the requisite medical standard of care, (2) the act or omission was performed negligently, and (3) there was a causal connection between the act or omission and plaintiff's injury." *Sheffler*, 950 S.W.2d at 267. Generally, the plaintiff must introduce expert testimony to establish the standard of care in a medical negligence case. *Ladish v. Gordon*, 879 S.W.2d 623, 628 (Mo.App. W.D.1994). Meyer had the burden of

proving Lockard failed to exercise that degree of skill and learning ordinarily exercised by members of his profession under the same or similar circumstances in treating Meyer's condition. *Id.*

■ Meyer's case was submitted to the jury on Instruction No. 7, plaintiff's verdict directing instruction. Instruction No. 7 submitted two disjunctive theories of negligence as follows:

### Instruction No. 7

Your verdict must be for the plaintiff if you believe:

First, defendant diagnosed the plaintiff as suffering from Crohn's disease, or defendant recommended a subtotal colectomy surgery, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence plaintiff sustained damage.

■ This court has held that it is error to give an instruction where there is no substantial evidence to support the issues submitted. *Ladish*, 879 S.W.2d at 628. When an instruction is given in the disjunctive, the plaintiff must introduce evidence that supports the submission of each allegation. *Sheffler*, 950 S.W.2d at 267. "If each allegation presented in the instruction is not supported by the evidence, and the giving of the instruction is not supported by the evidence, then the giving of the instruction is error." *Ladish*, 879 S.W.2d at 628.

Lockard argues Meyer failed to make a submissible case of medical negligence on either theory submitted to the jury on Instruction No. 7. Under his first theory, Meyer alleged that Lockard negligently misdiagnosed Meyer's condition as Crohn's disease and Meyer sustained damage as a direct result of this negligence. McCallum, Meyer's medical expert, testified that

Meyer never had Crohn's Disease, which has no known cure. Instead, Meyer suffered from Ulcerative Colitis, which was ultimately cured after a j-pouch procedure performed by McCallum. McCallum testified that the diagnosis became clear once the pathology report analyzing the biopsy specimens became available a few days after the 1995 surgery. Thus, he opined that Lockard failed to use "such care as a reasonable, prudent, and careful healthcare provider would have under the same or similar circumstances in failing to correctly diagnose [Meyer's] condition in '95."

Plaintiff's evidence indicated that, by continuing to treat Meyer for a disease he did not have, his cure was delayed for years. Accordingly, his symptoms, including "flagrant diarrhea" and abdominal pain, continued. McCallum testified that Lockard's failure to correctly diagnose Meyer's condition based on the results from the surgery in January 1995 contributed to the damage thereafter to Meyer.

Viewing the evidence in a light most favorable to the submission of the claim, we do not find a complete absence of probative fact to support the first theory of medical negligence. We give the "plaintiff the benefit of every reasonable inference," and disregard, "defendant's evidence to the contrary." 879 S.W.2d at 633. We find that Meyer introduced sufficient evidence to submit to the jury the issue of Lockard's alleged negligence in diagnosing Meyer's condition as Crohn's Disease.

As to Meyer's second theory of negligence, after reviewing the record, we find absolutely no evidence to support the allegation that Lockard acted negligently when he recommended the subtotal colectomy. In his brief, Meyer argues the testimony of McCallum, the sole medical expert called to testify regarding Lockard's negligence, supports this allegation. At no point during his testimony, however, did McCallum opine that Lockard was negligent in recommending the subtotal colectomy.

In his brief, Meyer argues:

A subtotal colectomy is a surgical procedure not appropriate for treatment of ulcerative colitis, the disease from which Jared actually suffered. By recommending a subtotal colectomy rather than a complete colectomy, even after Dr. Lockard possessed surgical biopsies that showed ulcerative colitis rather than Crohn's Disease, Dr. Lockard permitted [Meyer's] ulcerative colitis to continue....

This argument contains no citations to the record and ignores the chronology of Meyer's treatment. McCallum testified that, subsequent to the subtotal colectomy, Lockard should have diagnosed Meyer's condition as Ulcerative Colitis. He asserted that the results of the post-surgery pathology report and Meyer's lack of progress after the surgery indicated that Meyer suffered from Ulcerative Colitis, not Crohn's Disease. Accordingly, he believed Lockard "could have taken different steps" and "might have considered other options" *after* the surgery. However, the record is devoid of evidence to support a finding that Lockard was negligent *in recommending* the subtotal colectomy, which is the second disjunctive submission contained in Instruction No. 7. A theory of recovery cannot exist in a vacuum.

## Conclusion

There is simply no evidence in the record to support Meyer's theory that Lockard was negligent in recommending the subtotal colectomy in 1995. Meyer's sole expert, McCallum, never testified that in recommending the subtotal colectomy, Lockard's treatment of Meyer fell below the acceptable standard of care. Because Meyer offered no evidence supporting one

of his disjunctive theories of negligence, it was error to submit the case to the jury on Instruction No. 7.

■ Plaintiff is not entitled to "a new trial on any allegations of negligence which were not supported by the evidence". *Ladish,* 879 S.W.2d at 635. We, therefore, reverse and remand for a new trial on whether Lockard acted negligently in diagnosing Meyer's condition as Crohn's Disease, the sole allegation of negligence supported by Meyer's evidence. *Id.* at 635. This court need not address Lockard's remaining points on appeal. *Deckard v. O'Reilly Auto., Inc.,* 31 S.W.3d 6, 19 (Mo. App. W.D.2000).

ULRICH, P.J., and NEWTON, J., concur.