Joseph L. CRIMI, Plaintiff-Respondent,

v.

Margaret CRIMI, Defendant-Appellant.

No. 34182.

Missouri Court of Appeals,
St. Louis District.

March 28, 1972.

John J. Donnelly, St. Louis, for defendant-appellant.

Arthur L. Swinnerton, St. Louis, for plaintiff-respondent.

BRADY, Chief Judge.

The plaintiff husband brought this action seeking to be divorced from the defendant.

The trial court ruled in plaintiff's favor and defendant's allegations of prejudicial error go to the issue above.[1] We affirm.

■ Before stating the facts we note the failure of defendant's brief to comply with the provisions of Civil Rule 84.04(d), V.A.M.R. The provisions of that rule are too well known to require repetition. It is sufficient to state that an allegation of error that "appeals court is not bound by the findings of the trial court in a divorce case" is blatant and obvious violation of the rule preserving nothing for our ruling, and that point, whatever it might be, will not be ruled herein. Defendant's other allegations of prejudicial error are dangerously close to total deficiency. However, with an effort this court will not continue to expend, we can with difficulty discern defendant's contentions. These are that plaintiff's uncorroborated evidence cannot furnish a basis for a decree of divorce; that by his questions and the "manner in putting them" the trial court demonstrated a prejudice against defendant; and that, since the trial court felt that both parties were at fault, it was error to award plaintiff a decree. Accordingly, we will not dismiss this appeal but will rule the merits trusting what has been stated here will avoid a repetition of such faults in a brief.

As in many cases of this nature the evidence of the parties was largely contradictory. The plaintiff gave evidence from which the trial court could have found that he performed all his husbandly duties; that defendant called him a lazy bum, a no good swine, a "no-good bastard"; that she "complained about everything"; that defendant's daughter would come over when the parties were quarrelling—about twice a week—and call plaintiff "bad names" among which were "bastard", all the while critizing plaintiff and yelling at him without justification; that on one occasion defendant threw a glass of water at him; that when he got home late from work defendant would "smell" him; that the arguments between the parties were of such a violent nature that plaintiff was hospitalized for a general nervous condition in December of 1969; and that on many occasions after he got out of the hospital defendant told him she no longer loved him. Except for those occasions when defendant's daughter was present, all of these events took place when the parties were alone.

Defendant's evidence was contradictory except that she admitted that, under provocation, she threw a glass of water at plaintiff and her daughter admitted calling plaintiff a "bastard" on one occasion.

During the trial, while defendant's daughter was testifying concerning an incident in December of 1969 or January of 1970 at which time the witness called plaintiff a vile name, the court asked: "Did you think he was a sick man?" When Mrs. Deutsch, defendant's friend, was testifying concerning the Maifest at which she testified plaintiff became intoxicated, the court asked: "Would you conclude because a man drank too much beer on a hot day that would be grounds for divorce?" The court also asked both witnesses "[w]hether or not they should have married in the first place, * * *."

At the close of defendant's case, the court called both parties forward and addressed them concerning his alternatives. The court stated: "All this evidence is before me and I have to decide whether or not I will grant a divorce. There are three things I can do: tell both of you to get out of this courtroom, that you are all guilty of doing some things that you should not have done, none of which have (sic) been bad; or I could give the plaintiff,—which would be Mr. Crimi, the divorce; or I could give you the divorce. * * * If you want to go out there and live together and be happy with each other, I will send you back, but if

1. Defendant's cross bill seeking separate maintenance was denied by the trial court and since no issue as to that action is now preserved for our ruling matters bearing upon that decision will not be further stated.

you don't want that I am going to make up my mind."

In support of defendant's assignment of error that plaintiff's uncorroborated evidence cannot be a basis for divorce, reliance is placed on Haushalter v. Haushalter, Mo.App., 197 S.W.2d 703, at l. c. 708, 709, wherein it was stated that "* * * a divorce is rarely granted on the uncorroborated evidence of one of the parties." The occasion may be rare but its existence is recognized. It has been repeatedly held there is no inflexible rule requiring corroboration. Mayor v. Mayor, Mo.App., 351 S.W.2d 810; Miskimen v. Miskimen, Mo.App., 344 S.W.2d 289; Pilkinton v. Pilkinton, Mo.App., 401 S.W.2d 505. In many cases, requiring corroboration could well defeat the ends of justice. Sellars v. Sellars, Mo.App., 274 S.W.2d 509. Moreover, we are not totally convinced that plaintiff's evidence was entirely uncorroborated. The medical records introduced by defendant showed plaintiff was hospitalized because of nerves stemming from marital problems. Defendant's daughter verified that on one occasion she did in fact call plaintiff a "bastard". We rule this allegation of prejudicial error adversely to defendant and parenthetically (since there was no valid point preserving the issue) note that such evidence, believed by the trial court and accepted by this court under the rule of deference, is sufficient to support the decree.

From the statement "* * * that you are all guilty of doing some things that you should not have done, none of which have (sic) been bad * * *" defendant argues that the court felt both parties were at fault and urges therefore that neither was entitled to a divorce. But a review of the whole statement clearly indicates that no such intent was conveyed. The court was merely stating the alternatives available to him. Taken as a whole, the entire statement was made for the parties' edification and to offer them an opportunity to reconcile their differences if they were so inclined. His final statement: "* * * but if you don't want that I am going to make up my mind" makes this conclusion inescapable. Defendant's contention the trial court found both parties at fault is without merit.

Neither can we find the trial court was biased and prejudiced. Defendant does not contest the right of the trial court to ask questions of the witnesses, Gosnell v. Gosnell, Mo.App., 329 S.W.2d 230, but contends that the questions should be directed toward competent legal evidence and cannot be so phrased as to indicate an opinion. Indications of opinion are prohibited in jury trials. The cases cited by defendant all concerned jury trials and are distinguishable on that basis.

We have not burdened this opinion by setting out or even indicating the numerous questions and comments by the court that could have been interpreted by the plaintiff as prejudicial to him had the trial court's decision been in favor of the defendant. Such examples are unnecessary. From a fair reading of the transcript it readily appears that the questions and statements of the trial court whether made to the plaintiff or to the defendant or to her witnesses were obviously made in an attempt to adduce evidence upon the issues and did not indicate bias and prejudice. We rule this point against the defendant.

We must note, however, that whether the case is to be tried to the court or to the jury a judge presiding at a trial should at all times maintain an impartial attitude and a status of neutrality. He should exercise the highest degree of patience and forbearance consistent with decorum and an orderly trial. Rutlader v. Rutlader, Mo. App., 411 S.W.2d 826, l. c. 831. In the instant case it requires but a reading of the transcript to discern that the trial court did in fact grant the parties the fair and impartial trial which due process requires. The trial court should remember, however, that the parties have not the transcript before them at the time of trial and are then en-

gaged in an emotional adversary proceeding. Accordingly, in the interest of preserving that judicial decorum so necessary to the general public's belief in a fair trial the trial court should hold its questions and comments to a minimum.

The judgment is affirmed.

DOWD, SMITH, SIMEONE · and WEIER, JJ., concur.