Catherine BOEHM,
Plaintiff/Respondent,

v.

Joan PERNOUD, M.D.,
Defendant/Appellant.

No. ED 76223.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 20, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 25, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Robert A. Wulff, Scott J. Dickenson, St. Louis, for appellant.

Theodore H. Hoffman, Chalene N. Kass, St. Louis, for respondents.

Before MARY RHODES RUSSELL, C.J., CRAHAN, J., and BLACKMAR, Sr.J.

PER CURIAM.

Dr. Joan Pernoud ("doctor") appeals the judgment entered on a jury verdict finding her liable for medical malpractice. On appeal, doctor argues the trial court erred in entering the judgment because the plaintiff Catherine Boehm ("patient") failed to make a submissible case of negligence. We reverse and remand, as patient did not prove that doctor failed to follow the applicable standard of care.

On May 31, 1995 patient tripped and fell on her right side as she was leaving her home, snapping her neck in the process. Shortly thereafter, she began to see showers of black spots in her right eye. She contacted her ophthalmologist, doctor, who examined her that very day. Patient complained of soreness in her right eye that had been occurring for one year prior to her fall. She also informed doctor about the black spots in her field of vision.

During the examination, doctor checked patient's visual acuity and eye pressure. She then performed a slit lamp examination to check the front section of patient's eye. Doctor found many inflammatory cells in the eye. Finally, doctor dilated patient's pupil and used an indirect opthalmoscope to examine the retina. Doctor

noted she found no holes. However, she did find some lattice degeneration, which consisted of weak spots in the retina tissue. Doctor prescribed eye drops for patient's inflammation and instructed her to return in one week.

On the morning of patient's follow-up visit, she noticed her vision had become darker, "like a veil" over her eye. During the examination, doctor found that patient's retina had detached and referred her to a retinal specialist. Patient underwent several operative procedures to reattach the retina, but all proved unsuccessful.

Patient sued doctor, claiming she was negligent either in failing to diagnose a retinal hole on May 31, 1995 or in failing to refer patient to a retinal specialist that same day. The jury returned a verdict in favor of patient and awarded her $360,000 in past and future damages. This appeal followed.

In her first point, doctor argues the trial court erred in denying her motion for a directed verdict because patient failed to make a submissible case in that patient failed to establish that she had a retinal hole on May 31, 1995 or that the failure to refer her to a retinal specialist was a breach of the standard of care.

■■■ In determining whether a plaintiff presented a submissible case, we must view the evidence and inferences therefrom in a light most favorable to the plaintiff and disregard all contrary evidence. *Smith v. Kovac*, 927 S.W.2d 493, 496 (Mo. App.1996). To make a submissible claim of medical malpractice, the plaintiff must establish that the defendant's acts or omissions: (1) failed to meet the requisite standard of care; (2) were performed negligently; and (3) caused her alleged injuries. *Cline v. William H. Friedman & Assoc.*, 882 S.W.2d 754, 758 (Mo.App.1994). Generally, in a medical malpractice case, a plaintiff must introduce expert testimony to prove that the defendant failed to exercise the degree of skill and care ordinarily used under same or similar circumstances by members of his or her profession. *Id.*

■■■ We first address whether patient made a submissible case on her theory that doctor was negligent in failing to diagnose a retinal hole.

■■■ An honest error of judgment in making a diagnosis is insufficient to support liability unless that mistake constitutes negligence. *Dotson v. Hammerman*, 932 S.W.2d 880, 884 (Mo.App.1996). The patient must first show an incorrect diagnosis and, second, that the incorrect diagnosis was a result of the physician's negligence. *Id.* To find such negligence in the misdiagnosis of a patient, there must be evidence of the physician's failure to use the appropriate degree of skill and learning ordinarily used and exercised by other physicians in same or similar circumstances. *Id.*

Patient introduced the testimony of Dr. Robert Ralph, a general ophthalmologist. He testified that in his opinion a retinal hole occurred at the time of patient's fall on May 31, 1995. When asked whether the hole would have been visible, he replied that if certain methods were utilized "*hopefully* it would have been seen" (emphasis added). Later in his testimony, however, Dr. Ralph stated he believed a retinal specialist with the proper equipment and a proper examination would have been able to diagnose the hole.

Whether the retinal hole would have been visible, however, is irrelevant in this case. The issue is whether doctor's failure to diagnose an alleged hole deviates from the standard of care.

Dr. Ralph testified about the likelihood of a hole and whether it would have been seen. Nowhere, however, does he state that doctor's alleged failure to diagnose the hole deviated from the standard of care. The most patient has shown is an honest error of judgment on doctor's part. As we have previously stated, however, this is insufficient to support liability. Therefore, patient failed to make a submis-

sible case of negligence on her failure to diagnose theory.

We turn our attention to the question of whether patient made a submissible case on her theory that doctor was negligent in failing to refer her to a retinal specialist.

Dr. Ralph believed that even though doctor's records stated she viewed no holes in patient's retina, doctor should have had a high suspicion of a retinal hole. He proposed two possible methods she could have utilized. She could have allowed patient to rest for a while and do a second examination, or she could have referred her to a retinal specialist.

When asked whether referring to a retinal specialist is generally done, Dr. Ralph replied, "I always do that." Finally, Dr. Ralph was asked, " . . . when you say I would do that, under the circumstances, do you think that's consistent with the standard of care because that's what we would measure you by?" He replied, "Yes. It's consistent with the standard of care."

We find patient failed to make a submissible case on this theory also. Dr. Ralph testified that he always refers his patients to specialists in cases where he is unsure whether he has viewed the entire retina. An expert doctor's opinion, however, must be based upon an established standard of care and not upon a personal standard. *Dine v. Williams*, 830 S.W.2d 453, 457 (Mo.App.1992). Mere evidence that a doctor's conduct did not measure up to the standards of an individual member of the profession, as opposed to the standards of the profession at large, does not constitute substantial evidence of probative force to support a submission of negligence as individual standards may be higher or lower than the standards of the profession as a whole. *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 884 (Mo. App.1985).

Dr. Ralph went on to state that referring patient to a specialist was "consistent with the standard of care." Just because a course of action is consistent with the standard of care, however, does not necessarily mean that not following that course of action constitutes a deviation from the standard of care. A particular course of action may surpass the standard of care of a profession, yet it would still be consistent with that standard. There was no evidence that in failing to refer patient to a retinal specialist, doctor failed to exercise the degree of skill and care ordinarily used under same or similar circumstances by other ophthalmologists. Therefore, patient failed to make a submissible case on her failure to refer theory.

As patient failed to make a submissible case on either theory, the trial court erred in entering judgment in her favor. Point I is granted. Due to our disposition of point I, we need not address doctor's point II.

The judgment of the trial court is reversed, and the case is remanded with instructions to enter judgment in favor of doctor.