Carl WICKLUND, Plaintiff/Respondent,

v.

Frans HANDOYO, M.D. and Binwant Singh, M.D., Defendants/Appellants.

No. ED 85595.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 1, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 2005.

Application for Transfer Denied
Jan. 31, 2006.

J. Thaddeus Eckenrode, Seibel & Eckenrode, P.C., St. Louis, MO, for appellant.

David M. Zevan, Kevin J. Davidson, David M. Zevan and Associates, P.C., St. Louis, MO, for respondent.

KENNETH M. ROMINES, Judge.

Defendants/Appellants Drs. Frans Handoyo, M.D. and Binwant Singh, M.D. (collectively "Appellants"), appeal from the trial court's denial of their post-trial motions for a directed verdict and judgment notwithstanding the verdict ("JNOV"), or in the alternative, for a new trial, after a jury found them liable in negligence for the death of Plaintiff/Respondent Carl Wicklund's ("Mr. Wicklund" or "Plaintiff") son, David Wicklund ("David"), and awarded Mr. Wicklund $675,000. The trial court entered its judgment on 2 September 2002.

## FACTUAL BACKGROUND

The evidenced adduced at trial, viewed in the light most favorable to the verdict, reveals that on 28 June 1999, David was admitted to SouthPointe Hospital ("SouthPointe") for psychiatric treatment. While under the care of SouthPointe, David was also treated for abdominal pain, and several medical tests were run to determine the cause of the problem. During his treatment at SouthPointe, David's medical condition worsened, and he was admitted to the intensive care unit on 2 July 1999. Subsequent tests revealed that David had a major colon infection, and he was placed on a respirator that evening. Nonetheless, David's condition continued to worsen, and he died approximately five hours later.

In April of 2001, David's parents, Carl and Vivian Wicklund,[1] filed a medical malpractice and wrongful death action against several defendants involved in the medical treatment of their son during his stay at SouthPointe, including Drs. Handoyo and Singh. The Wicklunds subsequently amended their petition, and named several additional defendants in the action. In particular, the Wicklunds alleged that the doctors involved in diagnosing and treating David's medical symptoms failed to adequately monitor David's abdominal condition while he was under their care. During the course of discovery, however, several of the original defendants were dismissed from the case, and at the time of trial, only Drs. Handoyo and Singh remained.

At trial, Mr. Wicklund presented the expert testimony of Dr. Mark Cooperman ("Dr. Cooperman"), a board certified physician in general surgery. Dr. Cooperman offered testimony, first, regarding whether Drs. Handoyo and Singh deviated from the proper standard of care in their treatment of David, and second, whether their alleged misdiagnosis caused David's death. Dr. Cooperman testified that both doctors' treatment fell below the proper standard of care. In particular, Dr. Cooperman testified that since David's colon infection was not responding to antibiotics, his doctors should have sought a surgical consult. Dr.

---

1. Mrs. Wicklund died prior to trial, and Mr. Wicklund remained the sole plaintiff in the action.

Cooperman also testified that David should have undergone surgery to remove the infected portion of his colon, and further, that there was a good chance surgery would have saved his life. However, Dr. Cooperman also admitted that there was a small chance David might not have survived surgery, regardless of when it occurred. Specifically, Dr. Cooperman testified that David's primary physician, Dr. Singh, failed to properly monitor David, get appropriate consultations, and react to nurses' calls that David's condition was worsening. Dr. Cooperman summarized that these failures, especially the failure to consult a surgeon, contributed to David's death on 3 July 1999.

During the course of direct examination at trial, Mr. Wicklund's counsel asked Dr. Cooperman to define the proper standard of care for a patient such as David, to which he answered, "the strict definition of standard of care is what a reasonable and prudent physician would do in similar circumstances." However, Dr. Cooperman went on to say, "[w]hat I think the standard of care really means is what's sensible care, what's good for the patient."

Following the close of all the evidence, counsel for Drs. Handoyo and Singh filed a motion for a directed verdict, which the court denied. After the court's ruling, the parties held a jury instruction conference. At the conference, defense counsel offered a verdict director that allowed the jury to apportion fault for David's death among Drs. Handoyo and Singh, as well as two other doctors who were originally named as defendants in the Wicklunds' petition, but were never served as party defendants: Dr. Jason Lee, M.D. and Dr. Tshishwaka Kayembe, M.D. However, the trial court refused to instruct the jury that it could apportion fault to Drs. Lee and Kayembe. Therefore, the court instructed the jury to apportion fault, if any, among

only Drs. Handoyo and Singh. The jury subsequently found for Mr. Wicklund, and awarded him damages in the amount of $675,000. In particular, the jury found Dr. Handoyo 20% at fault, and ordered him to pay $135,000, and Dr. Singh 80% at fault, and ordered him to pay $540,000. Drs. Handoyo and Singh subsequently filed a motion for JNOV, or in the alternative, for a new trial. The trial court denied all post-trial motions and this appeal followed.

Drs. Handoyo and Singh bring three points of error. First, they claim that the trial court erred in denying their post-trial motions because the plaintiff failed to establish that Appellants deviated from the appropriate standard of care in that Mr. Wicklund's expert, Dr. Cooperman, failed to properly state the appropriate standard of care during his direct examination. Second, Appellants claim that the trial court erred in denying their post-trial motions because the plaintiff failed to establish the essential element of causation in his negligence claim in that the record does not demonstrate that, but for the doctors' failure to request a surgical consult, David would have lived. Third, Appellants claim that the trial court erred in refusing to instruct the jury that it could apportion fault to Drs. Lee and Kayembe, who participated in David's care and were named in the original petition, but were never served, and were dismissed from the suit prior to trial. We affirm.

## DISCUSSION

### I. The Standard of Care

In their first claim of error, Appellants argue that the trial court erred in denying their motions for a directed verdict and JNOV because the plaintiff failed to establish that they deviated from the appropriate standard of care in that Mr. Wicklund's expert, Dr. Cooperman, failed to properly

state the appropriate standard of care during his direct examination.

■ We note initially that our review of a trial court's denial of a motion for JNOV is whether the plaintiff has made a submissible case. *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 338 (Mo.App. E.D. 2000). In order to make a submissible case, a plaintiff must present "substantial evidence for every fact essential to liability." *Id.* Whether evidence is substantial, and whether inferences drawn are reasonable, are questions of law. *Id.* In determining whether a plaintiff has made a submissible case, we review the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the plaintiff. *Id.* Accordingly, we will not overturn a jury verdict unless there is a complete absence of probative facts to support it. *Id.* Where reasonable minds can differ on the question before a jury, we can not disturb the jury's verdict. *Id.* Since a judgment notwithstanding the verdict is a drastic action, it should only be granted when reasonable minds could not differ on a correct disposition of the case. *Id.*

■ A plaintiff in a medical malpractice case must introduce evidence from an expert witness establishing that the defendant failed to meet the requisite standard of care. *Boehm v. Pernoud*, 24 S.W.3d 759, 762 (Mo.App. E.D.2000). However, the expert may not simply testify that the defendant's conduct "did not measure up to the standards of an individual member of the profession." *Id.* Rather, the expert must testify that the defendant failed to meet the "standards of the profession at large," in order to make the plaintiff's case. *Id.* Missouri's approved jury instruction defines negligence as "the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant's profession," MAI 11.06 (1990), and

this statement must appear in the expert's testimony. *Ladish v. Gordon*, 879 S.W.2d 623, 634 (Mo.App. W.D.1994).

In this case, Mr. Wicklund's expert, Dr. Cooperman, testified to the following at trial regarding the relevant standard of care: "the strict definition of standard of care is what a reasonable and prudent physician would do in similar circumstances. What I think that standard of care really means is what's sensible care, what's good for the patient."

In their brief, Drs. Handoyo and Singh take issue with both portions of Dr. Cooperman's testimony regarding the standard of care. First, they argue that his "strict definition" deviated from MAI 11.06, and thus, was not sufficient. Second, they argue that Dr. Cooperman's statement on what he *thinks* that standard of care means likely confused the jury because it did not know whether he based his subsequent opinions on the "strict definition" of the standard of care, or on his own interpretation. Furthermore, they argue that this alternative definition was not sufficient because it did not use the magic words "reasonable" and "prudent."

Although we agree that Dr. Cooperman could have stated the standard of care, as required by MAI 11.06, with greater precision, we do not agree that plaintiff wholly failed to establish this element of his case. Appellants rely on *Ladish v. Gordon, supra*, for the proposition that Dr. Cooperman's statements failed to sufficiently state the standard of care. In *Ladish*, the Western District of this Court held that the plaintiff's expert witness failed to properly articulate the standard of care when he simply told the jury that the defendant physician's conduct "fell below 'accepted medical standards.'" *Id.* at 633. In particular, the defendant in *Ladish* argued that the plaintiff failed to state the standard because the plaintiff's expert "never

gave any description or definition of the meaning of the phrase 'standard of care' in his testimony." *Id.* at 634. The Western District agreed, and held that, "use of the terms 'accepted medical standards' and 'standards of care' do not in themselves satisfactorily articulate the appropriate legal standard." *Id.*[2] Rather, "the fact finder must be informed as to whether the witness, in offering opinions, is using the standard prescribed by law and not some other standard." *Id.*

■ However, we do not believe that *Ladish* applies to this case because, unlike in *Ladish,* Dr. Cooperman sufficiently defined the standard of care, albeit imperfectly, when he stated: "the strict definition of standard of care is what a reasonable and prudent physician would do in similar circumstances." In fact, the *Ladish* court itself held that "[i]t is not necessary that the legal standard be recited in ritualistic fashion, but generally it must appear somewhere in the context of the expert's testimony that the proper objective legal standard is ... being employed." *Id.* In *Ladish,* however, the plaintiff's expert never stated the standard, and instead, used phrases such as, "it would have been more appropriate," and "the usual approach," and the court held that the plaintiff did not sufficiently state the standard. *Id.* at 635.

In this case, however, Dr. Cooperman did not use such vague statements as the sole basis for reciting the standard of care. Rather, although he did not ritualistically recite MAI 11.06 verbatim, we hold that his definition was sufficiently close to satisfy the *Boehm* standard.

Furthermore, we believe that Dr. Cooperman's second statement regarding his thoughts on the standard of care did not so confuse the jury as to eviscerate the effect of his first, required statement. Although *Ladish* instructs that the jury must know that the expert, in offering opinions, is using the prescribed legal standard, as opposed to some other standard, we defer to the trial court's implicit ruling that the jury was not so confused. As previously discussed, Dr. Cooperman's testimony was markedly different from that of the expert in *Ladish,* and included a sufficient definition of the standard. Therefore, since Dr. Cooperman's testimony generally comported with *Boehm* and MAI 11.06, we will not disturb the trial court's ruling.

For these reasons, we hold that the trial court did not err when it held that Mr. Wicklund made a submissible case because Dr. Cooperman adequately stated the standard of care, and further, that his subsequent commentary on the standard of care was of no consequence. Point one is denied.

## II. The Causation Element

■ In their second claim of error, Appellants argue that the trial court erred in denying their post-trial motions because Mr. Wicklund failed to establish the essential element of causation in his negligence case. In particular, Appellants argue that the record reveals Mr. Wicklund's expert, Dr. Cooperman, failed to establish that, "but for" their failure to get a surgical consult, David would have survived.

■ We note initially that in order to make out a prima facie case of medical malpractice, the plaintiff must establish the following three elements: (1) proof that the defendant's act or omission failed

**2.** It should be noted, however, that the *Ladish* court subsequently found, notwithstanding the shortcomings of the expert's testimony, that the plaintiff did establish this portion of the case, in large part because the *defendant's* own evidence acknowledged the duty in dispute. *Id.* at 635.

to meet the requisite standard of care; (2) proof that the act or omission was performed negligently; and (3) proof of a causal connection between the act or omission and the injury sustained by the plaintiff. *Klaus v. Deen,* 883 S.W.2d 904, 907 (Mo.App. E.D.1994). For purposes of this claim of error, Appellants take issue with only the third element of Mr. Wicklund's prima facie case, and argue that because Dr. Cooperman did not establish that their failure to get a surgical consult actually caused David's death, Mr. Wicklund failed as a matter of law to make out his prima facie case.

Thus, we also note as an initial matter that in order for Mr. Wicklund to satisfy the causation element of his prima facie case, he must establish that Appellants' conduct was both: (1) the cause-in-fact; and (2) the proximate, or legal, cause of his son's death. *Tompkins v. Cervantes,* 917 S.W.2d 186, 190 (Mo.App. E.D.1996). In this case, Appellants primarily take issue with the cause-in-fact aspect of Plaintiff's case, and we will address it accordingly.[3]

Missouri case law reveals that in virtually all negligence actions, "cause-in-fact" causation is determined by applying the familiar "but for" test. *Id.* That is, the plaintiff must establish that, "but for the tortfeasor's conduct, the injured party would not have been damaged." *Id.* More specifically, in failure-to-diagnose cases, such as here, causation is established through expert testimony that "there is a

reasonable degree of medical or scientific certainty" that defendant's negligence caused the harm. *Wollen v. DePaul Health Center,* 828 S.W.2d 681, 682 (Mo. banc 1992). On the other hand, when an expert merely testifies that a defendant's action or inaction *might* or *could have* yielded a certain result, such testimony is "devoid of evidentiary value" and fails to establish causation. *Baker v. Guzon,* 950 S.W.2d 635, 646 (Mo.App. E.D.1997).

In this case, application of the "but for" test means that Mr. Wicklund must demonstrate, through expert testimony, that there is a reasonable degree of medical certainty David would have survived if Appellants had requested a surgical consult and surgery had been performed. At trial, Dr. Cooperman unequivocally testified that, as a surgeon, he would have recommended surgery, and further, that David more likely than not would have survived the surgery.

Thus, we are left with the following dispositive issue regarding this claim of error: was Dr. Cooperman's testimony regarding causation sufficient to establish that, but for Appellants' failure to seek a surgical consult, there was a reasonable degree of medical certainty that David would have survived surgery? We find that it was.[4]

Because this claim of error involves the trial court's denial of Appellant's motion for JNOV, our standard of review is whether the plaintiff has made a submissi-

---

3. In their brief, Appellants also take issue with the proximate cause aspect of plaintiff's case. However, because we believe there is no question that proximate causation would be established if cause-in-fact causation is established, we decline to engage in a protracted discussion of this point.

4. Appellants also argue in their brief that it was a "leap of faith" to assume that, even if they had ordered a surgical consult, surgery would have actually been performed. They

suggest that Appellant's failure to request a surgical consult, at most, cost David the *"chance* of having *surgery,* not the chance of *surviving"* (emphasis in original). We find this argument wholly without merit because Dr. Cooperman's testimony was sufficient to establish that if Appellants had ordered a surgical consult, any reasonable and prudent surgeon would have ordered surgery for David.

ble case. *Coggins,* 37 S.W.3d at 338. Specifically, we must review all the evidence in the light most favorable to the verdict, and must affirm the jury's verdict unless "there is a complete absence of probative facts to support it." *Id.*

In this case, the only relevant evidence adduced at trial involves the expert testimony of Dr. Cooperman. Mr. Wicklund's counsel directly asked Dr. Cooperman if, based upon his review of the medical files, he had an opinion regarding whether David was a candidate for surgery. Dr. Cooperman responded, in no uncertain terms, that David "desperately needed to have surgery." Dr. Cooperman further noted that, although David was "a very sick man" and "had a lot of problems going on," there was an "overwhelming probability" that he would have survived surgery. When asked again about David's chances of survival following surgery, Dr. Cooperman responded, "I don't think there's any question more likely than not he would have survived surgery." When asked whether this opinion was to a "reasonable degree of medical certainty," Dr. Cooperman responded in the affirmative.

In their brief, Appellants suggest that because Mr. Wicklund's claim was under a wrongful death theory, the only way this theory may be proven is to establish that David *"would not have died* if not for the inaction of Defendants/Appellants" (emphasis in original). Appellants further posit in their brief that Dr. Cooperman's testimony is "devoid of evidentiary value" because he "wavered" when he "implicitly admitted" that surgery did not work in the "overwhelming majority of cases." This argument suggests that in order for Mr. Wicklund to establish cause-in-fact causation, Dr. Cooperman must have testified that, had Appellants sought a surgical consult and surgery been performed, David *absolutely* would have survived. In sup-

port of this proposition, Appellant's cite to this Court's decisions in *Baker v. Guzon,* 950 S.W.2d 635 (Mo.App. E.D.1997) and *Tompkins v. Cervantes,* 917 S.W.2d 186 (Mo.App. E.D.1996) and argue that Dr. Cooperman's testimony was "self-contradictory," and thus, insufficient as a matter of law to establish causation. Specifically, Appellants point to testimony from Dr. Cooperman in which he indicated there was a chance that David *may* not have survived surgery, had it been performed.

However, we find no support for these propositions in Missouri case law on medical malpractice causation. Rather, our review of the relevant Missouri cases reveals two important principles. First, this court in *Schiles v. Schaefer* held that the plaintiffs established causation in their failure-to-diagnose medical malpractice case, even though the plaintiff's expert admitted on cross-examination that there was a 25% chance that the decedent would have died even if he had received proper treatment, 710 S.W.2d 254, 260–61 (Mo.App. E.D. 1986), *rev'd on other grounds by Jensen v. ARA Services, Inc.,* 736 S.W.2d 374, 377 (Mo. banc 1987). The *Schiles* court found that causation was established because the expert's opinion was "not couched in terms of possibilities," but rather, was "expressed clearly in terms of *reasonable* medical certainty," 710 S.W.2d at 260–61 (emphasis in original).

In this case, Dr. Cooperman's testimony, like the plaintiff's expert in *Schiles,* was clearly expressed to a "reasonable degree of medical certainty." Even though he could not say that surgery *absolutely* would have saved David's life, he clearly stated that there was "an overwhelming probability" David would have survived, had the surgery been performed.

Second, although Missouri does recognize the rule that self-contradictory evidence does not constitute sufficient evi-

dence of causation, *see Yoos v. Jewish Hosp. of St. Louis*, 645 S.W.2d 177, 185 (Mo.App. E.D.1982), courts must consider expert testimony on causation as an integrated whole unless it is "inherently self-contradictory," *Odum v. Cejas*, 510 S.W.2d 218, 223 (Mo.App.1974). In our view, the operative word is "inherently," and we believe there is no interpretation of Dr. Cooperman's testimony that could lead a reasonable jury to conclude that his testimony concerning David's post-operative chances of survival was *inherently* contradictory. On the contrary, Dr. Cooperman was quite explicit in asserting his belief that David's chances of surviving surgery were "overwhelmingly" probable. That said, we acknowledge that Dr. Cooperman fully admitted that David *may* not have survived surgery because he was indeed "very sick." However, we cannot say that this acknowledgement of medical reality constitutes an *inherent* contradiction in Dr. Cooperman's testimony.

For these reasons, we reject Appellants' argument that Dr. Cooperman's testimony concerning David's chances of survival were either self-contradictory or insufficient as a matter of law to establish the causation element of Mr. Wicklund's medical negligence case. Rather, we conclude that Dr. Cooperman's testimony presented sufficient evidence of causation to create a submissible case for the jury. Therefore, we hold that the trial court did not err when it denied Appellants' motions for a directed verdict and JNOV. Point two is denied.

### III. Jury Instructions

█ In their third and final claim of error, Appellants argue that the trial court erred in refusing to instruct the jury that it could apportion fault to Drs. Lee and Kayembe, who participated in David's care and were named in the original petition, but were never served, and were dismissed from the suit prior to trial. In particular, Appellants argue that the trial court misapplied Missouri law regarding the apportionment of fault. The relevant statute states, in pertinent part:

> In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services where fault is apportioned among the parties and persons released pursuant to subsection 3 of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to apportion fault among such persons and parties ... indicating the percentage of total fault of all the parties to each claim that is allocated to each party and person who has been released from liability under subsection 3 of this section.

Section 538.230(1) RSMo. (2000).[5]

The statute further defines a "release," for purposes of Section 538.230(1), as "any release, covenant not to sue, or similar agreement entered into by a claimant and a person or entity against which a claim is asserted arising out of the alleged transaction which is the basis of the suit." Section 538.230(3).

█ Because the issue of whether a jury was properly instructed is a question of law, our review of a trial court's decision is *de novo. Moore ex rel. Moore v. Bi-State Dev. Agency*, 87 S.W.3d 279, 293 (Mo.App. E.D.2002). A proper instruction submits only the ultimate facts, not evidentiary details, to avoid undue emphasis of certain evidence, confusion, and the danger of favoring one party over another. *Id.* Upon a claim of instructional error, we review the evidence "most favorably to the

**5.** All statutory references are to RSMo. (2000), unless otherwise indicated.

instruction, disregard[ing] · contrary evidence, and [we] reverse where the party challenging the instruction shows that the instruction misdirected, misled, or confused the jury." *Id.*

As previously discussed, in addition to Drs. Handoyo and Singh, Drs. Lee and Kayembe were also named in Mr. and Mrs. Wicklund's original petition. At the jury instruction conference, Appellants' counsel argued that the jury should be permitted to apportion fault to Drs. Lee and Kayembe because there was testimony at trial that their care was negligent. In particular, Appellants argued that the plaintiff's own expert witness testified that both Drs. Lee and Kayembe also deviated from the standard of care by failing to recommend a surgical consult for David. However, the trial court ultimately ruled that the jury would only be permitted to apportion fault, if any, among the Appellants in this case, Drs. Handoyo and Singh.

In support of this proposition, Appellants argued in their brief that, "[a]lthough subparagraph 3 of Section 538.230 clearly speaks to individuals that have been released or dismissed, it does *not* address issues regarding parties that have not been released or dismissed, have never been served, or were never parties" (emphasis in original). Appellants further suggest that, "[a]llowing the jury to consider the proposed verdict director against Dr. Lee would not be contradictory to the plain language of the statute."

Although we agree that such an application of Section 538.230 would not directly contradict the plain language of the statute, we decline to accept Appellants' invitation to adopt this tortured reading of the statute.

█ It is an elementary principle of statutory construction, as well as established law in Missouri, that the expression of one thing means the exclusion of another.[6] This principle is derived from the Latin maxim, *expressio unius est exclusio alterius,* and it applies to this case. Section 538.230(1) specifically provides that, where applicable, a court "shall instruct the jury to apportion fault among such persons and parties" who have been "*released* pursuant to subsection 3 of this section" (emphasis added). Although Appellant's brief does not expressly admit that Drs. Lee and Kayembe were not "released" pursuant to Section 538.230, their argument certainly implies as much. Regardless, we find that neither Dr. Lee nor Dr. Kayembe fall within the parameters of a "released" party under Section 538.230(3) because the record reveals no evidence that any release, covenant not to sue, or similar agreement was ever entered into with Mr. Wicklund.

Accordingly, by applying the aforementioned maxim of statutory construction, we hold that the trial court correctly refused to allow the jury to apportion fault to Drs. Lee and Kayembe because Section 538.230(1) does not apply to parties named in the original petition, but not "released" pursuant to Section 538.230(3). Point three is denied.

### CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err when it denied Appellants' motions for a directed verdict and JNOV, or in the alternative, for a new trial because Dr. Cooperman properly stated the standard of care and

---

6. *See, e.g., Greenbriar Hills Country Club v. Director of Revenue,* 47 S.W.3d 346, 352 (Mo. banc 2001); *Westwood Country Club v. Director of Revenue,* 6 S.W.3d 885, 887 (Mo. banc 1999); *Kansas City v. J.I. Case Threshing Mach. Co.,* 337 Mo. 913, 87 S.W.2d 195 (banc 1935).

established a causal connection between Appellants' care and David's subsequent death. Finally, the trial court did not err when it instructed the jury that it may only apportion fault to Drs. Handoyo and Singh because, under Section 538.230(3), Drs. Lee and Kayembe were never "released" from liability, and as such, they could not be subject to a jury's apportionment of liability pursuant to Section 523.230(1).

The judgment of the trial court is AFFIRMED.

GARY M. GAERTNER, SR., P.J., and GEORGE W. DRAPER III, J., concur.