Sabrina **WATSON, et al., Respondents,**

v.

**TENET HEALTHSYSTEM SL, INC., et al., Defendants,**

and

**Asma Zainab, M.D. and Anwer Rahman, M.D., Appellants.**

No. ED 91997.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 22, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 25, 2010.

Application for Transfer Denied March 23, 2010.

Lawrence Smith, Aaron I. Mandel, Clayton, MO, for Appellants.

Kwadwo Armano, Vincent Banks, III, Saint Louis, MO, for Respondents.

## OPINION

GLENN A. NORTON, Presiding Judge.

Asma Zainab, M.D. and Anwer Rahman, M.D. (collectively, "Doctors")[1] appeal the judgment entered upon a jury verdict in favor of Sabrina Watson, Bernice McDonald and Audrey Walker ("Plaintiffs") on their wrongful death action. We reverse and remand for a new trial.

## I. BACKGROUND

This case is troubling in many respects.[2] Plaintiffs brought an action for wrongful death based on medical malpractice against Doctors, claiming negligence in the care and treatment of their mother, Jannette Robinson ("Decedent"), following complications which arose after placement of a central line. While the facts in this case are largely undisputed, the specific theory of liability under which Plaintiffs were pursuing their claims is unclear from a review of the evidentiary record. This jury-tried case was further complicated by the trial judge's interference with Plaintiffs' presentation of their evidence.

During their case in chief, Plaintiffs presented their expert witness, Dr. Courtney Houchen. Plaintiffs questioned Dr. Houchen regarding his review of Decedent's medical records and his understanding of the events that transpired during her hospital stay. Dr. Houchen also explained the purpose of a central line and what the procedure entails. Plaintiffs' counsel questioned Dr. Houchen at length regarding his review of the medical literature on complications that can arise during the placement of a central line. During Plaintiffs' questioning of Dr. Houchen, and before any testimony had been elicited establishing any of the elements of Plaintiffs' case, the trial judge interrupted the questioning and the following took place.

THE COURT: A couple of the jurors have some serious time issues. So I'm telling Plaintiff's attorney *all I'm going*

---

1. Tenet Healthsystem SL, Inc., Howard Place, M.D., Jason Brashear, M.D., George Matuschak, M.D., and Noel Rubio, M.D. were dismissed from this case prior to the commencement of trial. The only remaining defendants at the time of trial were Doctors.

2. It is telling that despite receiving a jury verdict in their favor, Plaintiffs filed a motion for new trial asserting that the trial court abused its discretion and denied Plaintiffs a fair and just opportunity to present their claims to the jury when it took over the questioning of Plaintiffs' expert. The trial court denied Plaintiffs' motion.

*to let him do is what was the standard of care in this case ... and was it violated. That's direct.* The Defendant has to get some cross in. And I don't know if he is going to get enough, but that's my ruling.

[DOCTORS' COUNSEL]: Judge, I'm just objecting to the court telling Plaintiff's lawyer what to do to make his case. . . .

THE COURT: All right. Go.

[PLAINTIFFS' COUNSEL]: Doctor, was an x-ray film obtained in this case?

[DR. HOUCHEN]: Yes.

THE COURT: Stop. Sir, in this particular case in terms of the matter and circumstances that were handled from the moment that there was an indication of the need to put this device in the decedent's neck, is there an appropriate standard of care that doctors are suppose to follow in doing that?

[DR. HOUCHEN]: Yes.

THE COURT: Would you tell the jury what, if anything, that is?

[DR. HOUCHEN]: When a central line is placed, immediately post procedure a chest x-ray should be performed to determine, one, whether the line is placed in the appropriate place; and, two, whether there is any collapse of the lung; and, three, whether there is any other abnormalities such as hemothorax or any other complication that can be obtained on x-ray.

THE COURT: Do you have an opinion within a reasonable degree of medical certainty as to whether the standard of care was violated in this case?

[DOCTORS' COUNSEL]: Judge, just for the record I object.

THE COURT: We will talk in a minute. Do you have an opinion?

[DR. HOUCHEN]: Yes.

THE COURT: Tell the jury what, if anything, your opinion is.

[DR. HOUCHEN]: In my opinion the x-ray was obtained well after the procedure was performed, I think well after the procedure was performed, several hours. And the hemothorax or the pleural effusion, which turns out to be a hemothorax, was diagnosed on the x-ray that was obtained.

THE COURT: All right. I'm going to have to end that.

(emphasis added).

The trial judge did not ask Dr. Houchen any questions which would have established causation. Upon ending his questioning of the witness, the judge directed Doctors' counsel to begin cross-examination.

At the close of Plaintiffs' evidence, Doctors moved for a directed verdict. The judge denied Doctors' motion. At the close of all evidence, Doctors renewed their motion for a directed verdict, which the trial court also denied. The matter was submitted to the jury and a verdict was returned in favor of Plaintiffs. Following the court's denial of Doctors' motion for judgment notwithstanding the verdict, judgment was entered for the Plaintiffs, and Doctors filed the instant appeal.

## II. DISCUSSION

### A. Plaintiffs Failed to Make a Submissible Case

In their first point on appeal, Doctors claim that the trial court erred in denying their motion for judgment notwithstanding the verdict because Plaintiffs failed to make a submissible case in that, *inter alia,* there was no evidence of causation. We agree.

### 1. Standard of Review

■ We review a trial court's denial of a motion for judgment notwithstanding the verdict to determine whether the plaintiff made a submissible case. *Wicklund v. Handoyo*, 181 S.W.3d 143, 147 (Mo.App. E.D.2005). "In order to make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability." *Id.* (internal quotations omitted). Whether evidence is substantial is a question of law. *Id.* In determining whether Plaintiffs made a submissible case, we will view the evidence in the light most favorable to Plaintiffs, giving them the benefit of all favorable inferences. *Id.*

## 2. Proof Required to Make a Submissible Case of Wrongful Death Arising from Medical Negligence

■ Plaintiffs' petition asserts an action for wrongful death arising from medical negligence. To make a submissible case, Plaintiffs were required to show: (1) Doctors failed to meet a required medical standard of care; (2) Doctors' acts or omissions were performed negligently; and (3) Doctors' acts or omissions caused Decedent's death. *Sundermeyer v. SSM Regional Health Services*, 271 S.W.3d 552, 554 (Mo. banc 2008).

■ With respect to the element of causation in a wrongful death action, a plaintiff must prove that, but for the defendant's actions or omissions, the patient would not have died. *Super v. White*, 18 S.W.3d 511, 516 (Mo.App. W.D.2000). "In a medical malpractice case, where proof of causation requires a certain degree of expertise, the plaintiff must present expert testimony to establish causation." *Sundermeyer*, 271 S.W.3d at 554. Moreover, such expert testimony must be given to a "reasonable degree of medical certainty." *Id.* at 555–56.

## 3. Plaintiffs Failed to Establish Causation

■ After a thorough review of the testimony presented at trial we find that Plaintiffs failed to establish the elements necessary to submit a claim of wrongful death arising from medical negligence to the jury. Specifically, there was no evidence of whether, based on a reasonable degree of medical certainty, Doctors' actions or omissions caused Decedent's death.

Plaintiffs' direct examination of Dr. Houchen included questioning regarding his review of Decedent's medical records and his understanding of what occurred during the course of her treatment. Dr. Houchen also explained the purpose of a central line, what the procedure entails, and the complications that can arise during the placement of a central line.

Apparently convinced that the Plaintiffs were not properly adducing evidence, the trial judge interrupted their direct examination and stated that he was limiting Plaintiffs' further examination of their witness to questions intended to establish the standard of care. Then, after only one question by Plaintiffs' counsel, the trial judge stopped the examination and took over the questioning of the witness. The judge proceeded to ask Plaintiffs' expert whether there was an appropriate standard of care applicable to the facts of this case, and whether, in the expert's opinion, the standard of care had been violated by Doctors. The judge did not inquire as to the expert's opinion regarding causation. Upon ending his questioning of the witness, the judge turned the witness over to Doctors for cross-examination.

No expert testimony was adduced establishing, to a reasonable degree of medical certainty, the element of causation. Thus, because Plaintiffs failed to make a submissible case, the trial court erred in denying

Doctors' motion for judgment notwithstanding the verdict. Point one is granted.

## B. Outright Reversal is not Appropriate in this Case where the Trial Judge's Interference in the Questioning of Plaintiffs' Expert Effectively Precluded Plaintiffs from Establishing Causation

In their second point on appeal, Doctors argue that this matter should be reversed outright with judgment entered in their favor. We disagree.

Pursuant to Missouri Supreme Court Rule 72.01(d) (2009), if an appellate court reverses the denial of a motion for judgment notwithstanding the verdict, it is not required to enter judgment in favor of the party that asserted the motion, but may order a new trial. Upon finding that the trial court erred in denying a motion for judgment notwithstanding the verdict, an appellate court may: (1) enter judgment for the moving party; (2) order a new trial; or (3) remand the case to the trial court for a determination of whether or not there should be a new trial. Steven A. Katz and Judge Almon H. Maus, *Civil Rules Practice*, 16 Missouri Practice Series section 72.01(d)–15 (2009).

Where a plaintiff prevails in the trial court and an appellate court reverses because of insufficient evidence, the preference is to remand for a new trial. *Moss v. National Super Markets, Inc.*, 781 S.W.2d 784, 786 (Mo. banc 1989). Reversal without remand is only appropriate where the appellate court is persuaded that the plaintiff cannot make a submissible case upon remand. *Id.*

Our review of the record does not convince us that Plaintiffs would be unable to make a submissible case on remand. In this case, the trial judge interfered to such an extent that Plaintiffs' presentation of evidence was limited. "The trial judge's interference in the trial may have prevented [Plaintiffs] from adducing evidence sufficient to establish a prima facie case." *Carney v. Port*, 47 A.D.2d 913, 913, 369 N.Y.S.2d 630 (N.Y.App.Div.1975). In light of the trial judge's interference in this case,[3] it would be inappropriate to reverse this matter outright and enter judgment for Doctors. The furtherance of justice requires that a case shall not be reversed without remanding unless we are convinced that, under the facts of the case, recovery cannot be had. *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 458 (Mo.App. W.D.2004). "A case should not be reversed for failure of proof without remanding, unless the record indicates that the available essential evidence has been fully presented." *Id.*

"There are [ ] matters in this transcript which lead us to the conclusion an outright reversal would be unjust in light of the circumstances of this appeal." *Brautigam v. Hoffman*, 444 S.W.2d 528, 534 (Mo.App.

---

**3.** We are particularly troubled by the trial judge taking over the questioning of Plaintiffs' expert in this case, where a jury was sitting as the finder of fact. "[A] judge presiding at a trial should at all times maintain an impartial attitude and a status of neutrality. He should exercise the highest degree of patience and forbearance consistent with decorum and an orderly trial." *Crimi v. Crimi*, 479 S.W.2d 195, 197 (Mo.App.1972). In order to maintain a status of neutrality, a trial judge should keep his questions and comments to a minimum. *Cundiff v. Cline*, 752 S.W.2d 409, 412 (Mo.App. S.D.1988). By asking questions of Plaintiffs' expert witness specifically intended to establish elements of Plaintiffs' case, the trial judge abused his role of neutrality. The trial judge not only interfered with Plaintiffs' attempt to establish a theory of liability, he prohibited Plaintiffs' counsel from proceeding with their direct examination. As a result, Plaintiffs were not allowed to ask their expert any additional questions intended to establish the elements of their prima facie case of negligence.

1969). Specifically, the trial judge's limitations on Plaintiffs' evidence effectively precluded Plaintiffs from making a submissible case. The evidence does not establish that Plaintiffs could not make a submissible case against Doctors if the evidence were fully developed; therefore, we decline to reverse outright. *See Commerce Bank,* 141 S.W.3d at 458 (remand available even though plaintiff had not made a submissible case, where the record failed to indicate that essential evidence had been fully presented). "The facts of this case are not such that convince us a recovery cannot be had and we believe justice requires a remand [for a new trial]." *Brautigam,* 444 S.W.2d at 534.

Point two is denied.

## III. CONCLUSION

The judgment of the trial court is reversed and the cause is remanded for a new trial.

MARY K. HOFF, J., and LAWRENCE E. MOONEY, J., concur.